IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CHRIMAR SYSTEMS, INC., and CHRIMAR HOLDINGS COMPANY, LLC<br><br>*Plaintiffs,*<br><br>V.<br><br>TP-LINK USA CORPORATION.<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 6:15-CV-641<br>JRG-JDL<br><br>JURY TRIAL DEMANDED |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant TP-Link USA Corporation's ("TP-Link") Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a). (Doc. No. 22.) Plaintiffs Chrimar Systems, Inc. and Chrimar Holding Company, LLC ("Chrimar") filed a response (Doc. No. 23) to which TP-Link filed a reply (Doc. No. 24), and Chrimar filed a sur-reply (Doc. No. 27). After considering the parties' arguments, the Court **DENIES** TP Link's Motion to Transfer Venue (Doc. No. 22).

### BACKGROUND

On July 2, 2015, Chrimar filed this action against TP-Link alleging infringement of United States Patent Nos. 8,155,012 ("the '012 Patent"), 8,942,107 ("the '107 Patent"), 8,902,760 ("the '760 Patent"), and 9,019,838 ("the '838 Patent") (collectively the "patents-in-suit"). Specifically, in its original complaint, Chrimar alleged that TP-Link "makes, uses, offer to sell, sells, and/or imports Power over Ethernet ("PoE") powered devices ("PDs") that comply with and/or are compatible with IEEE 802.3af and/or 802.3at." (Doc. No. 1, at ¶ 17.)

1

Chrimar Systems Inc. is a Michigan corporation, with a principal place of business located at 36528 Grand River Avenue, Suite A-1, Farmington Hills, Michigan 48335. (Doc. No. 11, at ¶ 1.) Chrimar Holding Company, LLC is a Texas limited liability company with a place of business located at 911 NW Loop 281, Suite 211-30, Longview, Texas 75604. *Id.* at ¶ 2. Chrimar Systems, Inc. is the owner of the patents-in-suit and licensed those patents to Chrimar Holding Company, LLC. (Doc. No. 23-1, Declaration of John F. Austermann, III, at ¶¶ 5, 6) ("Austermann Decl.").) Chrimar Holding Company, LLC maintains a single office in Longview, Texas, where it employs one full-time employee, Amanda Barnes. *Id.* at ¶ 7. Ms. Barnes's duties include supporting Chrimar's licensing efforts by conducting product research, product testing, and marketing support. *Id.* Chrimar's documents related to the patents-in-suit and electronic documents relating to its Etherlock® products are located either at Chrimar's Longview office or on servers in Dallas, Texas. *Id.* at ¶ 8. Specifically, hard copy documents related to the patents-in-suit and documents related to the Etherlock® products that implement the patented technology are located in Longview, Texas, and documents related to the patents-in-suit, their development, the IEEE PoE standards, and licensing documents on located on the Dallas server. *Id.*

TP-Link is a California Corporation with a principal place of business is located at 975 Overland Court, San Dimas, California 91773. (Doc. No. 22-1, Declaration of Lewis Wu, at ¶ 4) ("Wu Decl.").) TP-Link has approximately 100 employees working in or near its headquarters in the Central District of California. *Id.* TP-Link specifically identifies four employees who have knowledge regarding the accused products and are located near TP-Link's San Dimas headquarters. *Id.* at ¶ 6. TP-Link identifies that technical, packaging and marketing documents for the accused products are located in or near its San Dimas headquarters. *Id.* at ¶ 8. TP-Link

identifies three PoE chip suppliers for the accused products, two of which are located in the Northern District of California, and one of which is located in the Central District of California. *Id.* at ¶ 11. TP-Link has one Texas-based employee, whose knowledge of the accused products TP-Link contends would be duplicative of those individuals otherwise identified by TP-Link. *Id.* at ¶ 10.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case

easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

**DISCUSSION**

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In this case, Chrimar does not contest that TP-Link conducts business within the Northern District of California and transfer is permissible under § 1404.

**I.     The Private Interest Factors**

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech,* 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden, TP-Link must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *In re Apple,* 743 F.3d at 1379; *see*

*also Invitrogen v. Gen. Elec. Co.,* No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through its declarations, TP-Link maintains that employees with relevant knowledge regarding the accused products are located in the Central District of California. Wu Decl. at ¶ 6. TP-Link specifically identifies the following four employees with relevant information located in or near San Dimas, California:

- Lewis Wu, Executive Vice President of TP-LINK USA, knowledge regarding how TP-LINK USA markets and sells the accused products;

- Howard He, Director of Product Management, knowledge regarding the lifecycles of the accused products and product information (including component vendors);

- Dana Knight, Director of Marketing, knowledge regarding the marketing of the accused products; and

- Winfred Shu, Accounting Manager, knowledge regarding the sales and financing of the accused products.

*Id.*

As to its documents, TP-Link contends that the hard copy documents related to the accused products, such as technical, packaging and marketing documents are located in or near San Dimas, California. *Id.* at ¶ 8. TP-Link also contends that its third-party chip suppliers located in the Northern District of California and the Central District of California will have information and documents relevant to this litigation. (Doc. No. 22, at 12.)

Chrimar identifies one employee in its Longview, Texas office—Amanda Barnes—who is responsible for supporting Chrimar's licensing efforts, conducting product research, testing products, and marketing. Austermann Decl. at ¶ 7. Chrimar contends that hardcopy documents relating to the asserted patents and electronic documents relating to its Etherlock® products,

5

which implement the patented technology, including marketing material for those products, are located in its Longview office and on servers in Dallas, Texas. *Id.* at ¶ 8. Chrimar also states that its EtherLock® products, which implement the patented technology, are physically located in the Eastern District of Texas. (Doc. No. 23, at 9–10.) Chrimar maintains it intends to present and demonstrate these products at trial and will make them available for inspection in this District. *Id.* Chrimar also maintains generally that Texas Instruments ("TI") will have substantial amounts of relevant documents because TI produced over 119,000 pages of documents in a related case brought by Chrimar. *Id.*

In weighing this factor, the Court must acknowledge that "the bulk of relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Here, TP-Link has established four employees with relevant knowledge and relevant documents in the Central District of California. TP-Link has not specifically identified any relevant documents or individuals with information in the Northern District of California. TP-Link merely identifies two chip suppliers who are located in the Northern District of California. Chrimar has identified one witness in this District, as well as relevant documents and products in this District. In sum, TP-Link has identified sources of proof that are closer to the Northern District of California, but has not specifically identified any sources of proof in that District, while Chrimar has specifically identified sources of proof in this District. Considering the number of witnesses identified in each district, as well as the specific categories of documents identified, the Court finds this factor is neutral.

*(b) The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses

6

whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at 316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

TP-Link specifically identifies one third-party witness: Geoffrey Thompson, who was the IEEE 802.3 Working Group Chairperson, and three former employees, all of whom are located in the Northern District of California. (Doc. No. 22, at 15.) Chrimar contends that Mr. Thompson has served as an expert witness by defendants in other cases filed by Chrimar and that his weight should be discounted because TP-Link could retain him as an expert. (Doc. No. 23, at 11–12.) However, given that TP-Link identified Mr. Thompson as a third-party potential witness and does not indicate any intention to retain him as an expert, the Court accepts that TP-Link has identified Mr. Thompson as a third-party potential witness located in the Northern District of California. TP-Link also generally identifies three third-party chip suppliers who are subject to the full subpoena power of the Northern District of California, but does not identify any specific individuals who have relevant information or where they are located. (Doc. No. 22, at 15–16.)

Chrimar specifically identifies two third-party witnesses who are claimed to have relevant knowledge. (Doc. No. 23 at 12–13.) Chrimar first identifies Martin Patoka of Texas Instruments ("TI") who Chrimar maintains has knowledge regarding the IEEE 802.3at Task Force's knowledge of Chrimar's patents and the decision to adopt the standard without considering these rights. *Id.* at 12. Chrimar contends that Mr. Patoka is still employed by TI,

which is located within 100 miles of this Court, and therefore that he is subject to the full subpoena power of this Court. *Id.* at 13. Chrimar also identifies Marc Sousa, a former Firmware Design Manager at TI who has knowledge of the design of PoE controllers. *Id.* Chrimar contends Mr. Sousa is subject to the full subpoena power of this Court as he is located in McKinney, Texas. *Id.*

Weighing the one third-party witness specifically identified in the Northern District of California, as well as the three generally identified chip suppliers in California, against the two specifically identified third-party witnesses in Texas, the Court finds this factor is neutral.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

As discussed, TP-Link has specifically identified four employees as willing witnesses with relevant knowledge of the accused products who are located in the Central District of California. Wu Decl. at ¶ 6. TP-Link has also specifically identified one third-party witnesses located in the Northern District of California, and generally identified three chip suppliers located in or near the Northern District of California. (Doc. No. 22, at 15-16.) TP-Link maintains that having trial in this District would significantly increase the inconvenience and expense for these witnesses.

8

Chrimar identifies Ms. Barnes who is a full-time employee located in Longview, Texas who will testify about the marketing of Chrimar's patented EtherLock® products. (Doc. No. 23, at 11.) Chrimar also identifies the inventors of the patents-in-suit, John Austermann and Marshall Cummings, who are located in the Detroit area and therefore are closer to this District than the Northern District of California. *Id.* Chrimar maintains a trial in this District would be more convenient and less expensive for these witnesses. As discussed above, Chrimar has also specifically identified two third-party witnesses who are located in or near this District. (Doc. No. 23, at 12–13.)

In sum, TP-Link has specifically identified four willing witnesses in the Central District of California, and Chrimar has named one willing witnesses in this District. In addition, there are two third-party witnesses identified for whom this District would be more convenient, and one for whom the Northern District of California would be more convenient. The convenience of the named inventors, being located in Michigan, is neutral. Thus, on balance, the Court finds this factor weighs only slightly in favor of transfer.

### (d) Other Practical Problems

#### (i) Judicial Economy

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. Chrimar contends that judicial efficiency weighs heavily against transfer because of this Court's familiarity with the patents-in-suit. (Doc. No. 23, at 5-6.) There are five cases filed in this District in 2013 that allege infringement of one of the patents-in-suit, U.S. Patent No. 8,155,012 ("the '012 Patent"): 6:13-cv-879, -880, -881, -882, -883 (hereinafter "*Chrimar I*" cases). There are also two cases filed in this District in 2015 that involve all four of

9

the patents-in-suit: 6:15-cv-163, -164 (hereinafter "*Chrimar II*" cases). As discussed, the *Chrimar I* cases all involved one of the asserted patents in the instant action. The undersigned presided over all five of those cases and issued a claim construction opinion construing disputed terms of the '012 Patent, as well as an order on summary judgment of indefiniteness. All five cases settled prior to the filing of the instant action. At the time the instant action was filed, the *Chrimar II* cases had been consolidated and were ready for a scheduling conference. In addition, on the same day the instant action was filed, twenty-five additional cases were filed in this District alleging infringement of the same patents, and five recently-filed additional cases involving two of the asserted patents were also pending in this District.

TP-Link maintains that the Northern District of California will have some experience from handling one currently pending case, 4:13-cv-1300, involving a related patent, U.S. Patent No. 7,457,250 ("the '250 Patent"). (Doc. No. 22, at 16–17.) Prior to the initiation of this action, Judge White issued a claim construction opinion construing the disputed terms of the '250 Patent. (4:13-cv-1300, Doc. No. 254.) In addition, TP-Link argues that the cases recently transferred to the Northern District of California by this Court weigh in favor of transfer. *Id.*

For purposes of judicial economy, the Court recognizes those benefits that were apparent at the time the instant action was filed. *See In re EMC Corp.*, 501 F. App'x. 973, 976 (Fed. Cir. 2013) ("a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed"). Here, at the time the instant action was filed, the undersigned had previously construed the disputed terms of one of the patents-in-suit in a terminated case, had one case pending with all four asserted patents, six additional cases with two of the asserted patents, and twenty-five co-filed cases with all four of the patents-in-suit asserted. The Northern District of California had one case pending involving a related patent for

which it had construed the disputed claim terms. This Court had not yet transferred cases, and the subsequent recent transfer of those cases is therefore irrelevant to the transfer analysis.

Given that this Court is the only court with substantive experience with some of the patents-in-suit, and currently has seventeen pending cases involving all four asserted patents (twenty-seven at the time of filing)—all assigned to the same judge—there were at least some apparent judicial economy benefits at the time of the filing that favor this action remaining in this District. While it appears the Northern District of California also had some familiarity with a related patent, this Court's substantive familiarity with the patents-in-suit weighs slightly against transfer.

## II. The Public Interest Factors

The parties agree that the public interest factors are neutral, aside from the administrative difficulties flowing from court congestion and local interest considerations.

*(a) The Administrative Difficulties Flowing From Court Congestion*

This factor is the most speculative, and cannot alone outweigh other factors. *Genentech*, 566 F.3d at 1347. However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis. *Id.* TP-Link cites varying general civil litigation statistics and contend this factor is neutral. (Doc. No. 22, at 18.) Chrimar cites to this Court's prior analysis based on data it presented regarding a case pending in the Northern District of California involving one related patent with a trial date set for August 22, 2016, forty-one months after it was initiated in the Northern District of California, compared to the *Chrimar II* cases (involving all four and two of the patents-in-suit, respectively) that are set for trial in October 2016, less than nineteen months from when those cases were initiated in this District. (Doc. No. 23, at 14.) As this Court previously stated, while generally the Court finds this factor to be speculative in nature, in this

instance, the co-pendency of related patent infringement actions is instructive. Where this Court has set trial on its related patent cases in a time frame that moves the case to trial twice as fast as the related case in the Northern District of California (nineteen months compared to forty-one months), the Court finds this factor weighs slightly against transfer.

*(b) The Local Interest in Having Localized Interests Decided at Home*

TP-Link maintains that the Northern District of California has a local interest in adjudicating this dispute because TP-Link maintains its headquarters in the Central District of California. (Doc. No. 22, at 18.) Chrimar maintains that this District has a local interest in these actions because Chrimar Holdings Company LLC is a Texas company that has been based in Longview, Texas for several years and maintains one full-time employee. (Doc. No. 23, at 15.)

Here, TP-Link only contends that the Northern District of California has a local interest because TP-Link is headquartered in the Central District of California. TP-Link provides no actual connection to the Northern District of California that would create a local interest for the adjudication of this action in that district. Therefore, the Court fails to see what, if any, local interest the Northern District of California has in this action. On the other hand, this District has at least some local interest as Chrimar has an office in this District and employs at least one permanent employee in this District. On balance, this factor is weighs slightly against transfer.

*(c) The Remaining Public Interest Factors*

The remaining public interest factors are neutral. Both courts are familiar with federal patent law and there are no conflicts to avoid.

**CONCLUSION**

Upon balancing the venue factors, the Court finds that TP-Link has not shown that the Northern District of California is a clearly more convenient forum. Here, the convenience of

12

witnesses weighed only slightly in favor of transfer, while the considerations of judicial economy, the local interest, and administrative difficulties flowing from court congestion weighed slightly against transfer.  The remaining factors were all neutral.

Ultimately, TP-Link has failed to show that the Northern District of California is clearly more convenient; rather, the showing demonstrates at best a mere shift of inconvenience. *See In re Apple Inc.*, 456 Fed. Appx. 907, 909 (Fed. Cir. 2012) ("What is more, measured against cases like *Volkswagen*, *TS Tech*, *Genentech,* and *Acer,* there is a plausible argument that [defendant] did not meet its burden of demonstrating below that the transferee venue is "clearly more convenient."); *Wellogix Technology Licensing LLC v. Automatic Data Processing, Inc. et al*, 6:11-cv-401 (E.D. Tex. March 19, 2013) ("although litigation is always an inconvenience, the "clearly more convenient" standard does not address a shift in inconvenience"). Accordingly, the Court **DENIES** TP-Link's motion to transfer (Doc. No. 22).

**So ORDERED and SIGNED this 28th day of March, 2016.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE